# PRYOR CASHMAN LLP

7 Times Square, New York, NY 10036-6569  Tel: 212-421-4100  Fax: 212-326-0806

New York | Los Angeles

www.pryorcashman.com

**James O'Brien**
Partner

Direct Tel: (212) 326-0121
Direct Fax: (212) 798-6317
jobrien@pryorcashman.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/14/11

RECEIVED
DEC 13 2011
CHAMBERS OF
ALVIN K. HELLERSTEIN
USDJ

December 12, 2011

*[handwritten note: Proceed to file a motion. I do not require pre-motion consent. 12/14/11 /s/ AKH]*

VIA FEDEX

Hon. Alvin K. Hellerstein
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1050
New York, NY 10007

Re: <u>Deep Woods Holdings v. Savings Deposit Insurance Fund of the Republic of Turkey</u>, Case No. 07 CIV. 934 (AKH)

Dear Judge Hellerstein:

We represent plaintiff Deep Woods Holdings, LLC ("Deep Woods"). We write pursuant to Local Civil Rule 37.2 to request an informal pre-motion conference with the Court regarding a discovery dispute that has arisen among Deep Woods and nonparty Turkish banks Vakifbank ("Vakif") and T.C. Ziraat Bankasi ("Ziraat" and, together, the "Banks") in connection with Deep Woods' efforts to enforce its judgment against the Savings Deposit Insurance Fund of the Republic of Turkey ("SDIF") for its frustration and breach of the parties' option agreement for certain shares of the Park Avenue Bank. Specifically, Deep Woods seeks an order pursuant to Federal Rule of Civil Procedure 37(a) directing and compelling the Banks to respond fully to information subpoenas and comply with restraining notices that Deep Woods served upon them.

In aid of the execution of Deep Woods' approximately $25 million judgment against defendant SDIF, Deep Woods served restraining notices and information subpoenas on the Banks on September 19, 2011 (the "Subpoenas") in compliance with CPLR 5222 and 5224 (**Exhibit "1"**). Deep Woods served the Subpoenas on the Banks because it has a good-faith reasonable belief that the Banks possess information concerning SDIF's assets because: (i) Vakif and Ziraat necessarily transact business with SDIF in SDIF's capacity as a Turkish banking regulator including, but not limited to, transactions in the form of regular payments of deposit insurance premiums[1] from the Banks to SDIF; (ii) the Banks hold assets for large Turkish

---

[1] For example, based upon information freely available on its website, Ziraat had total deposits of TRY 134.2 billion in 2011, of which approximately TRY 38.6 billion were required to be insured. Pursuant to Turkish Banking Law #5411, the insurance premium payments on such deposits may be as high as 20 basis points. Accordingly, Ziraat was obligated to make a payment to SDIF of as much as TRY 19.3 million, or approximately $10.5 million, for the

**PRYOR CASHMAN LLP**

Hon. Alvin K. Hellerstein
December 12, 2011
Page 2

entities, which likely include SDIF; and (iii) Ziraat and SDIF are likely to regularly transact business because SDIF is the insurer of Ziraat deposits, Ziraat is one of (or the) largest bank(s) in Turkey, SDIF is an agency of the Turkish government and Ziraat is wholly owned by the Treasury of the Turkish government.[2] Based on those reasonable beliefs, the Subpoenas asked the Banks to provide information about SDIF's assets from "**any parent or subsidiary of [the Banks]** or other related entity controlled by [the Banks]."

Before the Banks responded, Deep Woods sent each Bank a follow-up letter dated September 27, 2011 (the "Follow-Up Letters") (**Exhibit "2"**). The Follow-Up Letters explained the bases for the Subpoenas and, in particular, drew the Banks' attention to their obligations to disclose and restrain any deposit insurance premiums payable to SDIF.

The Banks both are represented by Michael Sullivan, Esq., of Sullivan & Worcester LLP. On behalf of Ziraat, Mr. Sullivan replied to the Subpoena and Follow-Up Letter by letter dated October 5, 2011 (**Exhibit "3"**). Despite the fact that the Subpoena sent to Ziraat requested information from Ziraat as well as any parent or subsidiary, the Ziraat bank's response was written only on behalf of Ziraat's "New York branch" to the specific exclusion of the remainder of Ziraat's banking organization. Relying upon a claim of immunity pursuant to the Foreign Sovereign Immunity Act (the "FSIA"), Ziraat claimed that the Subpoena was ineffective. It also claimed that its New York branch – again, to the specific exclusion of the remainder of the Ziraat entity – has no property within the scope of the Restraining Notice. Ziraat specifically asked Deep Woods to "consider the Ziraat Response as [Ziraat's] effort to resolve this issue without motion practice."

On behalf of Vakif, Mr. Sullivan replied with a document titled "Response Of Turkiye Vakiflar Bankasi T.A.O. New York Branch To Information Subpoena" (the "Vakif Response") (**Exhibit "4"**). Like Ziraat's response, the Vakif Response purported to provide responses to the Subpoena only on behalf of Vakif's New York Branch, to the specific exclusion of the remainder of the Vakif entity. Vakif objected to the Subpoena to the extent that it sought information from, or concerned activities at, any part of the Vakif organization other than its New York branch, and objected to the "vagueness" and "ambiguity" of the terms "parent" and "subsidiary," noting that "it has no parent or subsidiary as that term is usually understood." After expressly declining to provide responses for anything but its New York branch, Vakif answered every question posed in the Subpoena in the negative.

---

quarter ended June 30, 2011, a payment of approximately $10 million for the quarter ended Friday, September 30, 2011, and will be obligated to make another such payment on December 31, 2011.

[2] The Second Circuit recently noted, in a case unrelated to Deep Woods, that two litigants had agreed that Ziraat was an instrumentality of the Republic of Turkey. Guirlando v. T.C. Ziraat Bankasi A.S., 602 F.3d 69, 72 (2d Cir. N.Y. 2010). ("[t]he status of Ziraat as an instrumentality of the government of Turkey is not disputed.").

# PRYOR CASHMAN LLP

Hon. Alvin K. Hellerstein
December 12, 2011
Page 3

In reply to those dubious responses to the Subpoenas, I wrote a letter to Mr. Sullivan dated October 13, 2011 (the "October 13, 2011 Letter") (**Exhibit "5"**). I explained to Mr. Sullivan that, as this Court has held, a bank with a branch structure is a *unitary entity* and there is *no distinction* – corporate, legal, or otherwise – between one branch and another, or between a branch and an administrative office. I specifically cited this Court's recent opinion in *Eitzen Bulk A/S v. Bank of India*, 09-CV-10118 (AKH), 2011 U.S Dist. LEXIS 115002 (S.D.N.Y. Oct. 5, 2011), in which this Court specifically considered and rejected application of the "separate entity rule," upon which the Banks' responses rely, in post-judgment enforcement proceedings. I also explained that Ziraat is not immune from post-judgment enforcement proceedings under the FSIA because post-judgment enforcement proceedings require only personal jurisdiction over the subpoena recipient,[3] not subject matter jurisdiction (which is the sole purview of the FSIA), a position that also is supported by this Court's decisions in the *Eitzen Bulk* proceedings. Finally, I explained that FSIA does not relieve Ziraat of its obligations because, in this case, the proceedings fall within the "commercial activity" exception to the FSIA. Accordingly, we advised the Banks to comply with their obligations under the law, respond to the Subpoenas in full, and restrain the deposit insurance premiums payable to SDIF. We further advised Mr. Sullivan that failure to do so would require Deep Woods to seek intervention from the Court.

Instead of supplementing their Responses to provide the requested information as required by law, Mr. Sullivan responded on behalf of the Banks by separate letters both dated October 31, 2011.

In Vakif's letter (**Exhibit "6."**), it claimed that it had understood Deep Woods' Subpoena to be addressed, directed and delivered only to the specific New York branch of Vakif. Further, while Mr. Sullivan and Vakif did not disagree with Deep Woods' interpretation of Your Honor's opinion in *Eitzen Bulk*, they disclaimed its value as authority, stating flatly that despite this Court's holding to the contrary, "the separate entity rule still applies in post-judgment enforcement proceedings." Vakif also made the baseless assertion that because Your Honor's Order authorizing Deep Woods to begin attachment and execution proceedings "did not authorize the *seizure* of SDIF assets located outside of the United States ... further response to the Subpoena respecting SDIF's activities outside of the United States *would be futile* and, therefore, inherently unduly burdensome" (emphasis supplied).

Likewise, Ziraat's letter (**Exhibit "7"**) echoed Vakif's arguments and reiterated Ziraat's specious argument that the FSIA affords it immunity from post-judgment enforcement actions. Mr. Sullivan again dismissed Your Honor's reasoning in *Eitzen Bulk*, writing that "Judge Hellerstein's decision not to apply the separate entity rule in Eitzen Bulk does not alter the fact

---

[3] Both Ziraat and Vakif have appointed the Superintendent of the New York State Banking Department as their agent for service of process and both have offices in New York City. There can be no dispute that the Court has personal jurisdiction over the Banks.

# PRYOR CASHMAN LLP

Hon. Alvin K. Hellerstein
December 12, 2011
Page 4

that *other courts* have recognized its validity [in post judgment proceedings]" (emphasis supplied).

On November 8, 2011, in reply to those letters from Mr. Sullivan on behalf of the Banks, Deep Woods served Supplemental Information Subpoenas explicitly directed to the entire organization of each Bank (the "Supplemental Subpoenas") (**Exhibit "8"**). This time, Deep Woods specifically notified the Banks that "the information requested by the [Supplemental Subpoenas] is not geographically limited and [the Banks] are obligated to provide information from [their] entire international organization."

Although there could be no question that these Supplemental Subpoenas were directed to each bank's entire international organization, the Banks' position did not change. Specifically, Ziraat, by letter dated November 23, 2011 (**Exhibit "9"**), refused to substantively respond to the Ziraat Supplemental Subpoena at all, based, in part, on its earlier claim of entitlement to immunity under the FSIA even in post-judgment enforcement proceedings. Ziraat also argued, for the first time, that it could not provide the requested information because "Turkish confidentiality law...prohibits banks in Turkey from releasing information concerning customers, absent an order from a Turkish court..." Finally, Ziraat argued that deposit insurance premiums are "obligation[s] imposed by Turkish law and not in satisfaction of a 'debt' to SDIF." Finally, Ziraat apparently excused itself from compliance with its obligations under the law because to do so would not be in Deep Woods' best interest, writing that "information concerning a bank's payment for government required deposit insurance would *not provide Deep Woods with information useful for its judgment* enforcement efforts." (emphasis supplied). The Ziraat Supplemental Response was purportedly "Ziraat's effort to resolve this issue without motion practice."

Vakif, in response to its Supplemental Subpoena, replied with a "Response Of Turkiye Vakiflar Bankasi T.A.O. To Supplement Information Subpoena" dated November 23, 2011 (**Exhibit "10"**) in which Vakif once more objected to the questions posed to the extent they sought information from or concerning activities at any part of the Vakif banking organization other than its New York branch. Vakif also repeated Ziraat's defenses based on Turkish banking law. After disclaiming its legal obligations and refusing to fully respond to the Supplemental Subpoenas, Vakif answered every question posed in the Supplemental Subpoena in the negative.

The Banks' arguments are directly contrary to this Court's jurisprudence. Deep Woods commenced this suit in 2007 against SDIF because SDIF chose to frustrate and breach the option agreement it had entered. This discovery dispute has arisen because the Banks are attempting to frustrate Deep Woods' efforts to enforce its judgment by refusing to satisfy their obligation to respond to the Subpoenas and the Supplemental Subpoenas in full. It is evident from the attached correspondence that Deep Woods requires the Court's intervention to exercise its rights

# ■ PRYOR CASHMAN LLP

Hon. Alvin K. Hellerstein
December 12, 2011
Page 5

and obtain the information requested from the Banks in the Subpoenas. Accordingly, Deep Woods hereby requests that this Court schedule an informal conference between it and the Banks to resolve this dispute or, in the alternative, requests that this Court grant Deep Woods leave to file a motion to compel against the Banks pursuant to Federal Rule of Civil Procedure 37(a).

Respectfully submitted,

James S. O'Brien, Jr.

Encls.

cc: (via FedEx)

    Michael T. Sullivan, Esq. (msullivan@sandw.com)
    SULLIVAN & WORCESTER LLP
    *Attorneys for Nonparties Vakifbank and T.C. Ziraat Bankasi*

    Grant Hanessian, Esq. (grant.hanessian@bakermckenzie.com)
    John A. Basinger, Esq. (john.basinger@bakermckenzie.com)
    Michael Atkins, Esq. (michael.atkins@bakermckenzie.com)
    BAKER & MCKENZIE LLP
    *Attorneys for Defendant Savings Deposit Insurance Fund of the Republic of Turkey*