James S. O'Brien, Jr.
Ross M. Bagley
PRYOR CASHMAN LLP
7 Times Square
New York, New York  10036
(212) 421-4100
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEEP WOODS HOLDINGS, LLC,<br><br>                              Plaintiff,<br>          v.<br><br>SAVINGS DEPOSIT INSURANCE FUND OF THE REPUBLIC OF TURKEY,<br><br>                              Defendant. | 07-CV-934 (AKH)<br><br>**DECLARATION OF JAMES S. O'BRIEN JR. IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL** |

JAMES S. O'BRIEN, JR., under the penalties of perjury, declares and states as follows:

1. I am an attorney duly admitted to the United States District Court for the Southern District of New York and am a member of Pryor Cashman LLP ("Pryor Cashman"), attorneys for Plaintiff Deep Woods Holdings, LLC ("Deep Woods").

2. I submit this declaration in support of Deep Woods' motion for an order pursuant to Federal Rule of Civil Procedure 69 directing and compelling Turkish banks Turkiye Vakiflar Bankasi T.A.O. ("Vakif") and T.C. Ziraat Bankasi A.S. ("Ziraat" and, together, the "Banks") to respond fully to information subpoenas that Deep Woods served upon them.

**The Judgment**

3. On October 26, 2009 this Court granted summary judgment on breach of contract liability in favor of Deep Woods and against the Saving Deposit Insurance Fund of the Republic

of Turkey ("SDIF") (Dkt. 82) and, on March 15, 2011, awarded Deep Woods $16.2 million in damages plus interest, attorneys' fees, costs and expenses. (Dkt. 133).

4. Thereafter, judgment was entered in favor of Deep Woods on May 2, 2011 in the total amount of $25,348,841.10 (the "Judgment"), which currently remains due, unpaid, and unbonded, despite SDIF's pending appeal. (Dkt. 155). As of today, January 13, 2012, applying New York's post-judgment 9% interest rate, the Judgment amount is $27,495,237.33.[1]

5. SDIF has informed Deep Woods explicitly that it does not intend to pay any portion of the Judgment and that it does not believe Deep Woods will be able to collect the Judgment. A true and correct copy of a Declaration of Deep Woods member Eric Reehl stating as such (originally submitted with Deep Woods' motion for an order authorizing it to execute the Judgment) is attached hereto as Exhibit "1."

6. On August 12, 2011, this Court issued an Order pursuant to Section 1610(c) of the Foreign Sovereign Immunities Act, 28 U.S.C. 1602 *et seq.* (the "FSIA") deciding the remaining sovereign immunity issues in the case and granting Deep Woods the right to enforce its Judgment. (Dkt. 160).

**The Subpoenas and Responses**

7. In aid of execution of the Judgment, Deep Woods served restraining notices and information subpoenas on the Banks on September 19, 2011 (the "Original Subpoenas") in

---

[1] Below is a calculation of the judgment amount applying 9% interest through January 13, 2012.

| May 31, 2011 Judgment Amount | Interest Rate | Interest/Day | Days | Accrued Interest | Judgment Plus Interest | Attorneys' Fees | Total |
|---|---|---|---|---|---|---|---|
| $23,848,841.10 | 9% (CPLR §§ 5003, 5004) | $9,455.49 ($2,146,395.70 / 365 days per year) | 227 (5/31/11 through 1/1312) | $2,146,396.23 ($9,455.49 x 227) | $25,995,237.33 ($2,146,396.23 + $23,848,841.10) | $1,500,000.00 | 27,495,237.33 ($1,500,000.00 + $25,995,237.33) |

compliance with CPLR 5222 and 5224 with the reasonable belief that the Banks possess information about SDIF that will assist Deep Woods in collecting the Judgment. True and correct copies of the Original Subpoenas are annexed hereto as Exhibit "2".

8. Deep Woods' belief that the Banks possess information about SDIF that will assist it in collecting the Judgment is based largely upon its understanding that the Banks transact business with SDIF in its capacity as the Turkish banking regulator primarily responsible for insuring bank customer deposits, and specifically Deep Woods' belief that each of the Banks pay premiums to SDIF to maintain that deposit insurance.

9. Article 63 of Turkish Banking Law No. 5411 reads:

> The savings deposit and participation funds belonging to real persons in credit institutions shall be insured by the Savings Deposit Insurance Fund. Credit institutions shall insure their savings deposit and participation funds belonging to real persons on the basis of the portion subject to insurance, and shall pay the premiums on this basis…

A true and correct copy of the relevant page from Turkish Banking Law No. 5411, as downloaded from SDIF's website at: http://www.tmsf.org.tr/kanunlar.en, is annexed hereto as Exhibit "3."

10. Pursuant to the Regulation On Deposits And Participation Funds Subject To Insurance And Premiums Collected By Savings Deposit Insurance Fund:

> Premium amounts for savings deposits and participation funds are calculated based on the data compiled from credit institutions' financial reports published as of the end of March, June, September and December. Premium amounts for savings deposits and participation funds are calculated by multiplying the covered deposits…with premium percentages given in [Appendix 1, Appendix 2 and Appendix 3]...saving deposits and participation fund premiums are payable to the Fund by the end of the last working day of the second month following the period the financial statements are prepared, in the form of the same currency type for the Turkish Lira, US Dollar and Euro accounts and in US Dollars for the precious metals accounts and in other currency types.

3

A true and correct copy of the Regulation On Deposits And Participation Funds Subject To Insurance And Premiums Collected By Savings Deposit Insurance Fund, as downloaded from SDIF's website at: http://www.tmsf.org.tr/regulations.en, is annexed hereto as Exhibit "4."

11.     Ziraat's 2010 financial statements reveal TL 30,298,251,000 of savings deposits subject to deposit insurance by SDIF.  A true and correct copy of the relevant page from Ziraat's 2010 Annual Report, as downloaded from its website at: http://www.ziraat.com.tr/en/p/n/ContentMain.aspx?id=586, is annexed hereto as Exhibit "5."

12.     Vakif's 2010 financial statements reveal TL 5,664,532,000 of savings deposits subject to deposit insurance by SDIF. A true and correct copy of the relevant page from Vakif's 2010 Annual Report, as downloaded from its website at: http://www.vakifbank.com.tr/annual-reports.aspx, is annexed hereto as Exhibit "6."

13.     Based on those amounts, even if both Vakif and Ziraat fall within the highest category of credit institution, on which premiums are calculated at only 11 basis points, *see* Exhibit "4" at Appendix 2, p. 8, the combined premiums they would owe SDIF every quarter total nearly TL 40 million, or over $20 million.

14.     Upon information and belief, Ziraat is the second largest bank and Vakif is the fifth largest bank in the Turkish banking sector.

15.     In a prior unrelated action, Ziraat has claimed to be and put evidence before this Court that it is wholly-owned by the Turkish government, which claim and evidence were not disputed by its adversary in that action.  *See Guirlando v. T.C. Ziraat Bankasi, A.S.*, 602 F.3d 69, 73 (2d Cir. 2010), *cert. denied* 131 S. Ct. 1475 (2011) ("[Ziraat] submitted a declaration by its First Legal Counsel stating, *inter alia*, that Ziraat is a joint-stock company wholly owned by the government of Turkey").  Here, the parties in this action have agreed that SDIF is an agency or

instrumentality of the same, which agreement has been recognized and relied upon by this Court. (Dkt. 160).

16.     The Original Subpoenas asked the Banks to provide information about SDIF's assets from "**any parent or subsidiary of [the Banks]** or other related entity controlled by [the Banks]."

17.     Before the Banks responded, Deep Woods sent each Bank a follow-up letter dated September 27, 2011 (the "Follow-Up Letters").  True and correct copies of the Follow-Up Letters are annexed hereto as Exhibit "7."

18.     The Follow-Up Letters explained the bases for the Original Subpoenas and, in particular, drew the Banks' attention to their obligations to disclose and restrain any deposit insurance premiums payable to SDIF.

**The Ziraat Response**

19.     The Banks both are represented by Michael Sullivan, Esq., of Sullivan & Worcester LLP.  In response to the Original Subpoena and Follow-Up Letter directed to Ziraat, Mr. Sullivan sent a letter dated October 5, 2011 (the "October 5, 2011 Letter").  A true and correct copy of the October 5, 2011 Letter is annexed hereto as Exhibit "8."

20.     Mr. Sullivan wrote the October 5, 2011 Letter purportedly only on behalf of Ziraat's "New York Branch" to the specific exclusion of the remainder of Ziraat's banking organization, despite the fact that the Subpoena sent to Ziraat requested information from Ziraat as well as any parent or subsidiary and the fact that Ziraat's branches are not separate entities for the purpose of post-judgment discovery.

21.     After improperly limiting the scope of Ziraat's response, Mr. Sullivan refused to answer the questions in the Original Subpoena and claimed that the Original Subpoena was

"ineffective" because, he claimed, Ziraat and its New York branch "are immune from domestic legal proceedings pursuant to the Foreign Sovereign Immunity Act 28 USC § 1601 *et seq.*" He also asserted that Ziraat's New York branch – again, to the specific exclusion of the remainder of the Ziraat entity – has no property within the scope of the restraining notice.

**The Vakif Response**

22.     In response to the Original Subpoena and Follow-Up Letter to Vakif, Mr. Sullivan sent a document titled "Response Of Turkiye Vakiflar Bankasi T.A.O. New York Branch To Information Subpoena" (the "Vakif Response"). A true and correct copy of the Vakif Response is annexed hereto as Exhibit "9."

23.     As with Ziraat, Mr. Sullivan purported to write the Vakif Response only on behalf of Vakif's "New York Branch," and objected to the Original Subpoena to the extent it sought information other than that which is in the custody and control of its New York branch. Vakif also objected to Deep Woods' request for information from any "parent or subsidiary" of Vakif as "vague and ambiguous," but nonetheless explained that it "has no parent or subsidiary as that term is usually understood." After expressly declining to provide responses for anything but Vakif's New York branch, Vakif answered every question posed in the Original Subpoena in the negative.

24.     In reply to the October 5, 2011 Letter and the Vakif Response, Deep Woods sent a letter dated October 13, 2011 (the "October 13, 2011 Letter") explaining that in the post-judgment enforcement context, a bank with a branch structure is a unitary entity and there is no distinction – corporate, legal, or otherwise – between one branch and another, or between a branch and an administrative office. A true and correct copy of the October 13, 2011 Letter is annexed hereto as Exhibit "10."

25. Deep Woods specifically cited the recent opinion in *Eitzen Bulk A/S v. Bank of India*, 09-CV-10118 (AKH), 2011 U.S Dist. LEXIS 115002 (S.D.N.Y. Oct. 5, 2011), in which this Court considered and rejected application of the "separate entity rule" in post-judgment enforcement proceedings. Finally, Deep Woods explained that the FSIA does not relieve Ziraat of its obligations because these proceedings fall within the "commercial activity" exception to FSIA.

26. Accordingly, Deep Woods advised the Banks to comply with their obligations under the law, respond to the Original Subpoenas in full, and restrain any deposit insurance premiums payable to SDIF. Deep Woods further advised Mr. Sullivan that failure to do so would require it to seek intervention from this Court.

27. Instead of supplementing their Responses to provide the requested information as required by law, Mr. Sullivan responded on behalf of the Banks by separate letters both dated October 31, 2011. SDIF's counsel John Basinger of Baker & McKenzie LLP was copied on both letters.

28. In the October 31, 2011 Vakif Letter, Mr. Sullivan claimed that Vakif had understood Deep Woods' Original Subpoena to be addressed, directed and delivered only to the specific New York branch of Vakif. Further, Mr. Sullivan specifically disclaimed *Eitzen Bulk*'s value as authority, stating flatly that, despite this Court's holding to the contrary, "the separate entity rule still applies in post-judgment enforcement proceedings." Finally, Mr. Sullivan claimed that because this Court's Order authorizing Deep Woods to begin attachment and execution proceedings "did not authorize the <u>seizure</u> of SDIF assets located outside of the United States … further response to the Subpoena respecting SDIF's activities outside of the United

7

States would be <u>futile and, therefore, inherently unduly burdensome</u>." (emphasis supplied). A true and correct copy of the October 31, 2011 Vakif Letter is annexed hereto as Exhibit "11."

29. Mr. Sullivan echoed Vakif's arguments in the October 31, 2011 Ziraat Letter, and again specifically dismissed this Court's reasoning in *Eitzen Bulk*, writing that "Judge Hellerstein's decision not to apply the separate entity rule in *Eitzen Bulk* does not alter the fact that other courts have recognized its validity [in post judgment enforcement proceedings]." Mr. Sullivan also reiterated Ziraat's specious prior claim that it is immune from Deep Woods' post-judgment enforcement efforts pursuant to the FSIA. A true and correct copy of the October 31, 2011 Vakif Letter is annexed hereto as Exhibit "12."

**The Supplemental Subpoenas**

30. On November 8, 2011 Deep Woods served supplemental information subpoenas in compliance with CPLR 5222 and 5224 that were explicitly directed to the entire organization of each Bank seeking the amount and location of SDIF assets or debts (the "Supplemental Subpoenas" and, with the Original Subpoenas, the "Subpoenas"). True and correct copies of the Supplemental Subpoenas are attached hereto as Exhibit "13."

31. Deep Woods specifically advised the Banks that "the information requested by the [Supplemental Subpoenas] is not geographically limited and [the Banks] are obligated to provide information from [their] entire international organization."

32. Although there is no doubt that the Supplemental Subpoenas were directed to each bank's entire international organization, the Banks' positions did not change.

33. By letter dated November 23, 2011, on which Mr. Basinger was copied, Mr. Sullivan again claimed that Ziraat is immune from domestic legal proceedings under the FSIA and also argued for the first time that Ziraat could not provide the requested information because

"Turkish confidentiality law…prohibits banks in Turkey from releasing information concerning customers, absent an order from a Turkish court…"  A true and correct copy of the November 23, 2011 letter is annexed hereto as Exhibit "14."

34.     Finally, Ziraat argued that that deposit insurance premiums are not collectable because they are "obligation[s] imposed by Turkish law and not in satisfaction of a 'debt' to SDIF."  Ziraat argued that it is not required to provide information about its deposit insurance premiums because "information concerning a bank's payment for government required deposit insurance would not provide Deep Woods with information useful for its judgment enforcement efforts."

35.     On behalf of Vakif, Mr. Sullivan replied with a "Response Of Turkiye Vakiflar Bankasi T.A.O. To Supplemental Information Subpoena" dated November 23, 2011 (the "Vakif Supplemental Response").  Mr. Basinger was sent a copy of the Vakif Supplemental Response.  A true and correct copy of the Vakif Supplemental Response is annexed hereto as Exhibit "15."

36.      In the Vakif Supplemental Response, Vakif once more objected to the questions posed to the extent they sought information from or concerning activities at any part of the Vakif banking organization other than its New York branch, and also repeated Ziraat's defenses based on Turkish banking law.  After disclaiming its legal obligations and refusing to respond fully to the Supplemental Subpoena, Vakif answered every question in the negative.

37.     On December 8, 2011, I received a letter from SDIF (not through its counsel of record Baker & McKenzie LLP, but directly) requesting an extension of time to respond to interrogatories and a deposition notice Deep Woods had served upon it on November 9, 2011, explaining that it would need more time to respond because "Baker McKenzie LLP will not represent us in the execution proceedings in the above mentioned case.  [But that] [w]e are in the

9

process of retaining new counsel to represent [sic] in that matter." A true and correct copy of that December 8, 2011 letter is annexed hereto as Exhibit "16."

38. On December 27, 2011, Ronan McHugh of Bailey Law PC wrote to request another extension on behalf of SDIF and explained that his firm "has been hired to represent SDIF in connection with the [discovery] your client is seeking." A true and correct copy of the December 27, 2011 letter is annexed hereto as Exhibit "17."

39. On December 29, 2011, Kathy Bailey of Bailey Law PC entered her appearance, presumably replacing Mr. Basinger and Baker Mckenzie as SDIF's attorneys in these post-judgment proceedings. Dkt 162. SDIF has agreed to respond to Deep Woods' post-judgment interrogatories by January 30, 2012 and post-judgment deposition notice by February 6, 2012.

## CONCLUSION

For the foregoing reasons, this Court should grant an order compelling the Banks to fully answer the Subpoenas with respect to their entire worldwide organizations and to promptly provide such responses to judgment creditor Deep Woods. This Court should further award Deep Woods the costs and its attorney's fees incurred in bringing this motion.

Dated: New York, New York
January 13, 2012

                                 s/
                              JAMES S. O'BRIEN, JR.