Michael T. Sullivan
(msullivan@sandw.com)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Fl.
New York, NY 10104
(212) 660-3000

*Attorneys for*
T.C. Ziraat Bankasi A.Ş.
and
Türkiye Vakiflar Bankasi T.A.O.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEEP WOODS HOLDINGS LLC,

    Plaintiff,

  -against-

SAVINGS DEPOSIT INSURANCE FUND
OF THE REPUBLIC OF TURKEY
(TASARRUF MEVDUATI SIGORTA
FONU),

    Defendant.
------------------------------------------------------------X

07-CV-934 (AKH)

**DECLARATION
OF PROFESSOR
DR. SEZA REISOGLU**

  PROFESSOR DR. SEZA REISOGLU, pursuant to 28 U.S.C. § 1746, declares as follows:

  1. I submit this declaration to explain certain aspects of Turkish law, which I believe will assist the Court in addressing matters relevant to a pending motion to compel answers to information subpoenas served upon Türkiye Vakiflar Bankasi T.A.O. ("Vakif") and T.C. Ziraat Bankasi A.Ş ("Ziraat" and, collectively with Vakif, the "Banks"). The information set forth below is true to the best of my knowledge and belief.

2. In brief, it is my opinion that under Turkish law:

   A. The Banks may not disclose any information regarding their customers, absent an order from a Turkish court. Thus, if the defendant, the Savings Deposit Insurance Fund of the Republic of Turkey ("SDIF"), were a depositor at the Banks, the Banks could not disclose that fact, nor could they disclose any details concerning that relationship. Any banker who disclosed this information would be exposed to criminal penalties, including imprisonment and fines.

   B. Money that the Banks may pay to SDIF as premiums for depositor insurance is deemed to be the property of the Republic of Turkey and is immune from attachment under Turkish law (Banking Act No. 5411, Article 111/7). For the same reasons, money that SDIF may deposit with the Banks, remains property of the Republic of Turkey and is immune from attachment under Turkish law.

   C. In order to obtain information regarding the Banks' relationship with SDIF concerning SDIF deposits at the Banks, Deep Woods is advised to obtain a letter of request from this Court directed to the Ministry of Justice in Turkey.

   D. In order to enforce its judgment against SDIF, Deep Woods is advised to seek to domesticate its judgment in Turkey. The judgment of a US court can be enforced in Turkey through a judgment by a Turkish court.

## My Qualifications

3.      I received a Doctor of Law degree from the Ankara University School of Law in 1958. I was named an Associate Professor of Law at Ankara University in 1961 and a Professor of Law in 1968, where I taught courses on Civil Law and the Code of Obligations. I was a guest professor at the Berlin School of Law from 1971-1972. I served as a Legal Advisor and Chief Legal Counselor at Turkiye Is Bank, the largest private bank in Turkey, between 1961 and 2000. I have been the Chief Legal Counselor of the Banks Association of Turkey since 1978 and was honored with the 50th Anniversary Award of the Association. I have published 28 books, the majority of which are on the subject of banks, including the two-volume "Banking Act Notation," published in 2007.

## Turkish Law Regarding Disclosure of Bank Client Secrets

4.      Bankers in Turkey are prohibited from disclosing any information concerning their customers.

5.      Turkish legal regulations regarding banking client secrets are codified in the Banking Act, Law No. 5411, which came in to force on November 1, 2005. For the Court's ready reference, I attach an English translation of relevant excerpts of this law as Exhibit U.

6.      Article 73 of the Banking Act, entitled "Confidentiality," provides as follows:

> Those who, by virtue of their positions or in the course of performance of their duties, have access to confidential information about banks or clients are not permitted to disclose such confidential information to any person or entity other than the authorities expressly authorized by law.

7.      Article 159 of the Banking Act, entitled "Disclosing confidential information and documents," provides as follows:

> The persons who do not fulfill the requirements laid down in the first and third paragraphs of Article 73 of this Law shall be sentenced to imprisonment from one year to three years and a judicial fine from 1,000 days up to 2,000 days. The same punishments shall also be applied to third persons who disclose the confidential information or documents of the clients of banks.

8. The Turkish Criminal Code also contains provisions regarding the disclosure of client secrets. Article 239, entitled "Revealing confidential commercial, banking or customer information," provides as follows:

> Anyone who, through their position or duty, profession or craft announces or discloses information and documents to which they are party and which contain confidential commercial, banking or customer information to unauthorized persons shall be punished on complaint to imprisonment of from one to three years and a judicial fine of up to 5,000 days.

For the Court's ready reference, I attach an English translation of Article 239 of the Turkish Criminal Code as Exhibit V.

9. Judicial fines are regulated by Article 52 of the Turkish Criminal Code No. 5237. Paragraph 2 of that Article provides that a judicial fine will be assessed at an amount between 20 and 100 Turkish Lira (TL) per day.

10. The scope of client secrets is broad. As I wrote in "Banking Act Notation,"

> A client secret shall be considered in the broadest sense. A client secret usually arises from the bank's relations with its client and banking transactions executed with that client. Any and all information that the bank comes to know in its pre-contract and post-contract relations with the client…falls within the scope of client secrets. A letter addressed by the Banking Regulation and Supervision Agency (BRSA) to the banks states that "any information such as the client's name, telephone and address which falls within the scope of the bank's client secrets may not be disclosed unless the client authorizes it."

11. Turkish banks are subject to the supervision of the Banking Regulation and Supervision Agency (BRSA), which is a legal entity with administrative and financial autonomy.

*See* Banking Act Article 82. When a client secret is violated, the BRSA shall exercise its power to file a complaint with the Prosecutor's Office against the relevant bank officers. Upon receiving such a complaint the Prosecutor is required to conduct an investigation. If he finds that a client secret has been disclosed to someone other than the authorities explicitly authorized by law without the client's prior consent, a public action shall be instituted against the responsible bank officers. *See* Banking Act Article 162. *See, e.g., State v. Ozbek*, Supreme Court Decision 2010/5483, Registration No. 2007/15770 (reversing acquittal where bank officer disclosed contact information of customers). I attach an informal translation of the order of reversal as Exhibit W.

12. Under Turkish law, only a Turkish court may authorize the disclosure of client secrets. Turkish courts will not act directly on an order from a United States court requiring the disclosure of client secrets. A US court may, however, make a request through the Turkish Ministry of Justice for information regarding bank client secrets. A Turkish court will consider the request and, if approved, arrange for disclosure of the requested information to the Turkish court.

## Savings Deposit Insurance Fund

13. The Savings Deposit Insurance Fund ("SDIF") is also governed by the Banking Act. The SDIF is the sole public body authorized to insure savings deposits and to collect insurance premiums. Article 111 of the Banking Act describes the SDIF's functions and responsibilities:

> The Savings Deposit Insurance Fund, which is a public legal entity and which has administrative and financial autonomy has been established to insure deposits in order to protect the rights and interests of depositors and

to ensure confidence and stability in financial markets; insure deposits and contribution funds; manage the banks with the Fund; strengthen and restructure their financial standing; transfer, merge, sell or liquidate such banks; execute and conclude the follow-up and collection transactions of the receivables of the Fund, manage the Fund's assets and resources and perform other duties assigned thereto by the Law, within the framework of the powers given by this Law and other applicable legislation.

14. Banks based in Turkey are required to insure the savings deposits that they hold for their customers. Article 63, paragraph 1 of the Banking Act states that "[c]redit institutions shall insure their savings deposit and participation funds belonging to real persons on the basis of the portion subject to insurance, and shall pay the premiums on this basis." The amount of the savings deposits subject to insurance is set by the SDIF Board in consultation with the Central Bank, the BRSA and the Undersecretariat of the Treasury. *See* Banking Act Article 63, paragraph 2.

15. This means that the insurance premiums that banks pay for the deposits they maintain in Turkey are not in discharge of a debt to SDIF. Rather, they are in fulfillment of an obligation imposed by Turkish law.

16. If a bank fails to pay the required premiums by the due date, it must pay the premiums with default interest of one point forty percent (1.40%) per month. *See* Law of Recovery of Public Debts, No. 6183, Article 51.

17. In this context, although the premium receivables are deemed to be State property and State properties are immune from attachment, it is my opinion that if this Court were to determine that the premiums that the Banks pay to SDIF represented "debts" owed to SDIF, and that the restraining notices that Deep Woods served upon the New York branches of the Banks reached those "debts" and directed the Banks to turn over those premiums to Deep Woods, then

the Banks would nevertheless remain obligated to pay SDIF, effectively requiring them to pay the same sum of money twice.

18.     Third party creditors of the SDIF cannot seize or attach the deposit insurance premiums paid to SDIF. Article 111, paragraph 7 of the Banking Act states that "[t]he properties of the Fund shall be deemed to be state property. The properties, rights and receivables of the Fund shall not be seized or pledged." Article 82 of the Execution and Bankruptcy Law also provides that state property may not be attached.

19.     This means that the premiums that banks in Turkey pay to SDIF are immune from attachment; but it also means that funds subsequently deposited by SDIF with a bank in Turkey are also immune from attachment. In both instances, the funds are deemed to be the property of the Republic of Turkey.

20.     This is not to say that SDIF is immune from suit. SDIF may be sued in Turkey and if a Turkish court enters a judgment against SDIF, then SDIF will become obligated to pay that judgment as a matter of Turkish law.

## Enforcement of Foreign Orders

21.     Turkey's International Private and Civil Procedures Law No. 5718 provides procedures for the enforcement of a final order rendered by a court in a foreign jurisdiction. The details of this procedure are beyond the scope of this declaration, but in brief, the enforcing judgment creditor must establish that the foreign judgment is final; that it is not in contravention of Turkish public policy; that it does not concern a matter that is within the exclusive jurisdiction of Turkish courts (e.g., affecting real property); and that there is reciprocity with the jurisdiction

8

in which the judgment issued. While I have not studied the underlying case, I am not aware of any fact that would impede enforcement of the underlying judgment in Turkey once final.

22. Turkish courts, however, will not enforce a foreign attachment order. Under Turkish law, an attachment order by a foreign court is limited to the jurisdiction of the foreign country in which it was issued. Attachment orders issued by United States courts therefore are not enforceable in Turkey.

23. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 16, 2012
Ankara, Turkey

*S. Re.jc*

_____
PROFESSOR DR. SEZA REISOGLU