James S. O'Brien, Jr. (jobrien@pryorcashman.com)
Ross M. Bagley (rbagley@pryorcashman.com)
PRYOR CASHMAN LLP
*Attorneys for Plaintiff*
7 Times Square
New York, New York  10036
(212) 421-4100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEEP WOODS HOLDINGS, LLC,

                              Plaintiff,          07-CV-934 (AKH)

          v.

SAVINGS DEPOSIT INSURANCE FUND OF
THE REPUBLIC OF TURKEY,

                              Defendant.

**PLAINTIFF JUDGMENT-CREDITOR'S MEMORANDUM OF LAW
IN OPPOSITION TO THE BANKS' MOTION TO VACATE, SET ASIDE
OR RECONSIDER THE COURT'S FEBRUARY 3, 2012 ORDER**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ....................................................................................................... 2

I.   THE COURT SHOULD NOT SET ASIDE ITS PREVIOUS ORDER ................................. 2

II.  THE BANKS HAVE NO MERITORIOUS DEFENSES
     AND MUST RESPOND FULLY TO THE INFORMATION SUBPOENAS ....................... 4

   A. Ziraat's Claim Of Sovereign Immunity Is Meaningless
      Because This Dispute Falls Within The "Commercial
      Activity" Exception To The Foreign Sovereign Immunities Act .................... 5

   B. The Information Subpoenas To Vakif and
      Ziraat Comply With The FSIA And The CPLR ................................................ 9

      1. Section 1610 Of The FSIA Applies Only To Attachment And
         Execution And Does Not Limit The Scope Of Post-Judgment Discovery ........... 10

      2. The Information Subpoenas Comply
         With The Requirements Of The CPLR .................................................. 14

   C. The Comity Analysis Favors Deep Woods ................................................. 16

   CONCLUSION ............................................................................................. 19

## TABLE OF AUTHORITIES

**CASES**                                                        **PAGE(s)**

*British Int'l Ins. Co. v. Seguros La Republica, S.A.*,
    90 Civ. 2370 (JFK) (FM), 2000 U.S. Dist. LEXIS 7509 (S.D.N.Y. June 1, 2000).....16, 18

*Buffalo Laborers Welfare Fund v. Signal Constr. Co.*,
    06-CV-400A, 2011 U.S. Dist. LEXIS 122583
    (W.D.N.Y. Oct. 24, 2011) (Arcara, J.)..............................................................14

*CES Industries v. Minnesota Transition Charter Sch.*,
    287 F. Supp. 2d 162 (E.D.N.Y. 2003) ...............................................................4

*Church of Scientology Int'l v. Time Warner, Inc.*,
    No. 92 Civ. 3024 (PKL), 1997 U.S. Dist. LEXIS 12839
    (S.D.N.Y. Aug. 27, 1997), *aff'd sub. nom*, 238 F.3d 168 (2d Cir. 2001) ...........................3

*Dietrich v. Bauer*,
    76 F. Supp. 2d 312 (S.D.N.Y. 1999)...................................................................3

*Dulce v. Dulce*,
    233 F.3d 143 (2d Cir. 2000).............................................................................15

*EM Ltd. v. Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007).......................................................................10, 11

*Ehrlich v. Incorporated Village of Sea Cliff*,
    No. CV 04-4025 (LDW) (AKT),
    2007 U.S. Dist. LEXIS 40215 (E.D.N.Y. June 1,  2007) ...............................................2, 3

*Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*,
    Civ. A. No. 03-08554 (DCP) (JCF), 2009 U.S. Dist. LEXIS 33096
    (S.D.N.Y. Apr. 17, 2009)................................................................................18

*Fir Tree Capital Opportunity Master Fund, LP v. Anglo Ir. Bank Corp.*
    11 Civ. 0955 (PGG), 2011 U.S. Dist. LEXIS 136018 (S.D.N.Y. Nov. 28, 2011)...............9

*First America Corp. v. Price Waterhouse LLP*,
    154 F.3d 16 (2d Cir. 1998)..............................................................................16

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
    281 F.3d 48 (2d Cir. 2002)...........................................................................6, 12

*Gryphon Dom. VI, LLC v. GBR Information Services, Inc.*,
    29 A.D.3d 392, 815 N.Y.S.2d 65 (1st Dep't 2006) ..........................................14

**CASES**                                                                          **PAGE(s)**

*Gucci Am., Inc. v. Curveal Fashion,*
    09 Civ. 8459 (RJS)(THK), 2010 U.S. Dist. LEXIS 20834
    (S.D.N.Y. Mar. 8, 2010) ...................................................................16

*In re Health Management System, Inc. Sec. Litigation,*
    113 F. Supp. 2d 613 (S.D.N.Y. 2000)...................................................3

*Hunt v. Enzo Biochem, Inc.,*
    No. 06 Civ. 170 (SAS), 2007 U.S. Dist. LEXIS 34715 (S.D.N.Y. May 7, 2007)...............3

*Madanes v. Madanes,*
    186 F.R.D. 279 (S.D.N.Y. 1999) .........................................................16

*Minpeco S.A. v. ContiCommodity Services, Inc.,*
    116 F.R.D. 517 (S.D.N.Y. 1987) ....................................................17, 18

*Minpeco v. Hunt,*
    No. 81-cv-7619, 1989 U.S. Dist. LEXIS 5723 (S.D.N.Y. May 24, 1989) ......................12

*Montanile v. NBC,*
    216 F. Supp. 2d 341 (S.D.N.Y. 2002).....................................................3

*Peterson v. Islamic Republic of Iran,*
    563 F. Supp. 2d 268 (D.D.C. 2008) .......................................................5

*Rafter v. Liddle,*
    288 Fed. Appx. 768 (2d Cir. 2008)........................................................3

*Republic of Argentina v. Weltover, Inc.,*
    504 U.S. 607 (1992)......................................................................6

*Richmark Corp. v. Timber Falling Consultants,*
    959 F.2d 1468 (9th Cir. 1992) ...........................................................13

*SEC v. Tome,*
    No. 81 Civ. 1836 (MP), 1987 U.S. Dist. LEXIS 3269 (S.D.N.Y. Apr. 3, 1987)...............14

*Southway v. Central Bank of Nigeria,*
    994 F. Supp. 1299 (D.Colo. 1998).........................................................9

*Tiffany (NJ) LLC v. Qi Andrew,*
    276 F.R.D. 143 (S.D.N.Y. 2011) .........................................................16

**CASES**                                             **PAGE(s)**

*Walters v. People's Republic of China,*
    672 F. Supp. 2d 573 (S.D.N.Y. 2009) ....................................................................10, 11

*Weiss v. National Westminster Bank, PLC,*
    242 F.R.D. 33 (E.D.N.Y. 2007) ..........................................................................17

*Wiltshire v. Williams,*
    No. 10 Civ. 6497 (RWS), 2012 U.S. Dist. LEXIS 36119
    (S.D.N.Y. Mar. 15, 2012) ......................................................................................3

**STATUTES**

CPLR 5224 ..........................................................................................................14, 15

Local Rule 6.3 ........................................................................................................2, 3

3 CRR-NY 116.2 .......................................................................................................18

28 U.S.C. §1604 ........................................................................................................5

28 U.S.C. §1605(a)(1) ...........................................................................................7, 8

28 U.S.C. §1605(a)(2) .................................................................................... *passim*

28 U.S.C. §1610 .............................................................................................10, 12, 13

31 U.S.C. § 5312(a)(2)(D) .........................................................................................18

31 U.S.C. § 5318(g) ...................................................................................................18

**TREATISE**

Restatement (Third) of Foreign Relations Law § 442(1)(c) ........................................16

**OTHER**

*Black's Law Dictionary* 145 (9th ed. 2009) ...............................................................12

*Black's Law Dictionary* 650 (9th ed. 2009) ...............................................................12

Plaintiff judgment-creditor Deep Woods Holdings, LLC ("Deep Woods") respectfully submits this memorandum of law in opposition to the motion (the "Motion") of T.C. Ziraat Bankasi A.Ş ("Ziraat") and Tűrkiye Vakiflar Bankasi T.A.O ("Vakif" and, together with Ziraat, the "Banks") to vacate, set aside, or reconsider the Court's order of February 3, 2012 (the "Order") compelling the Banks to respond fully to Deep Woods Information Subpoenas dated September 19, 2011 and Supplemental Information Subpoenas dated November 8, 2011 (collectively, the "Subpoenas").

## PRELIMINARY STATEMENT

The Court should deny the Banks' motion for reconsideration because the Banks failed to inform the Court of their agreement to a briefing schedule and because they have no meritorious defense in any event.  Despite the Banks' attempt to shift the blame to Deep Woods for their failures, the fact is that it was the Banks that requested the adjournment and it was the Banks that failed to advise the Court.

More importantly, the Banks lack a meritorious defense.  As a threshold matter, the Banks' motion focuses almost exclusively on Ziraat.  It says virtually nothing about Vakif. Vakif is not an instrumentality of a sovereign and it has no possible defense under the FSIA. Accordingly, Vakif should immediately be ordered to comply with Deep Woods' information subpoena.

Ziraat's defenses also are not meritorious.  Ziraat falls squarely under FSIA's "commercial activity" exception to immunity, 28 U.S.C. §1605(a)(2).  It is undisputed that Ziraat conducts commercial banking operations in New York.  It avails itself of the privilege of banking in New York and gaining access to the U.S. credit markets.  It has pledged to conduct itself in accordance with New York banking law and is subject to the rules and regulations of the New

York Banking Regulators.  Deep Woods' information subpoena was based upon that commercial activity and seeks information about the Judgment Debtor SDIF's accounts at the Banks..  As such, Ziraat falls under FSIA's commercial activity exemption to immunity.

Secondly, the Banks argue that the information subpoenas seek information about assets that Deep Woods cannot attach because they are outside the U.S.  That argument, however, misses the point, which is that Deep Woods is entitled to learn the locations of SDIF's various assets and bank accounts to enable it to determine whether to domesticate its judgment in those foreign jurisdictions.  That it may be more or less difficult to execute on SDIF's assets in a particular jurisdiction is irrelevant to Deep Woods' entitlement to learn about them.

Finally, the notion that Turkey's banking law forbids banks from disclosing any information is unavailing.  The principles of international comity, articulated by the Second Circuit and set forth in the Restatement (Third) of Foreign Relations Law, make it clear that since the interest at stake here is not the interest of the Turkish Government but of Judgment Debtor SDIF, it is not worthy of comity.  Moreover, SDIF is before this Court and can be directed to consent to Deep Woods' requests, which would avoid any issue with Turkish banking laws. The Banks' argument on this point is a red herring.

Accordingly, the Court should deny the Banks' motion to reconsider.

## ARGUMENT

### POINT I

### THE COURT SHOULD NOT SET ASIDE ITS PREVIOUS ORDER

Motions for reconsideration in this district are governed by Local Civil Rule 6.3 and are committed to the sound discretion of the district court.  *See Ehrlich v. Incorporated Vill. of Sea Cliff*, No. CV 04-4025 (LDW) (AKT), 2007 U.S. Dist. LEXIS 40215, at *3-4 (E.D.N.Y. June 1,

2007); *Hunt v. Enzo Biochem, Inc.*, No. 06 Civ. 170 (SAS), 2007 U.S. Dist. LEXIS 34715, at *2-3 (S.D.N.Y. May 7, 2007). "Reconsideration is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Hunt*, 2007 U.S. Dist. LEXIS 34715, at *2 (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "Under Local Rule 6.3 [to obtain reconsideration] the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision. Reconsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light…of the availability of new evidence." *Montanile v. NBC*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (internal citations omitted); *Rafter v. Liddle*, 288 Fed. Appx. 768, 769 (2d Cir. 2008). For this reason, Local Civil Rule 6.3 is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 327 (S.D.N.Y. 1999); *see also Ehrlich*, 2007 U.S. Dist. LEXIS 40215, at *6 (the standard for granting a motion for reconsideration is "strict"); *Church of Scientology Int'l v. Time Warner, Inc.*, No. 92 Civ. 3024 (PKL), 1997 U.S. Dist. LEXIS 12839, at *6 (S.D.N.Y. Aug. 27, 1997), *aff'd sub. nom.*, 238 F.3d 168 (2d Cir. 2001) ("The standards for reargument are strictly applied in order to preserve scarce judicial resources and avoid piecemeal litigation."). Finally, even if a court grants a motion for reconsideration, it may reaffirm on other grounds the conclusion reached in its previous opinion. *Wiltshire v. Williams*, No. 10 Civ. 6497 (RWS), 2012 U.S. Dist. LEXIS 36119, at *8 (S.D.N.Y. Mar. 15, 2012).

The Banks have no one but themselves to blame for the Court's Order. Counsel for the Banks sought an extension of time in which to file opposition to Deep Woods' motion to compel.

As a professional courtesy to accommodate the Banks' counsel's schedule, Deep Woods agreed to an extended briefing schedule, and suggested that it would be prudent for the Banks' counsel to inform the Court that Deep Woods had agreed to the requested extension. Specifically, as noted in the Banks' Amended Memorandum of Points and Authorities in support of this Motion dated Feb 17, 2012 (the "Bank Mem."), Deep Woods' counsel wrote the Banks' counsel confirming the requested extension and informing the Banks' counsel that the Banks' "opposition would otherwise be due next week. Should we file a stipulation laying out the briefing schedule?" The Banks' counsel remarked "probably makes sense" and then, apparently, "expect[ed] that Deep Woods counsel would attend to the matter." (Bank Mem. at 5.) Why counsel for the Banks – who sought the adjournment – would expect Deep Woods to prepare a stipulation is unclear. What is clear, however, is that the Banks, not Deep Woods, failed to inform the Court of the briefing schedule. *See e.g.*, *CES Indus. v. Minnesota Transition Charter Sch.*, 287 F. Supp. 2d 162, 165 (E.D.N.Y. 2003) (denying motion to reconsider order granting motion to dismiss that defendant had failed to oppose due to law office error). Moreover, were the Court to reconsider the Order, it would reach the same conclusion because the Banks' arguments against Deep Woods' discovery lack merit. *Id.*

## POINT II

### THE BANKS HAVE NO MERITORIOUS DEFENSES AND MUST RESPOND FULLY TO THE INFORMATION SUBPOENAS

The Banks argue that Ziraat (but not Vakif) is an instrumentality of a foreign state and therefore immune from jurisdiction under the FSIA. However, Ziraat's foreign sovereign status does not exempt it from responding fully to the Subpoenas because Ziraat falls squarely within the "commercial activity" exception from immunity in section 1605(a)(2) of the FSIA. Moreover, contrary to the Banks' claim, the FSIA does not restrict the scope of the information a

judgment creditor may obtain about a judgment-debtors' assets and Deep Woods has established a reasonable belief, pursuant to the CPLR, that the Banks have information that will assist it in collecting its judgment. Finally, the Banks' argument that Turkish law prohibits them from revealing the requested information, which does apply to Vakif, is irrelevant because a properly conducted comity analysis weighs heavily in Deep Woods' favor. In fact, the argument that the Banks are precluded by Turkish law from identifying SDIF's assets is an illusion. SDIF is before the Court and can be directed to <u>allow</u> the banks to release the requested information. In short, all the purported "defenses" to Deep Woods motion to compel lack merit and should be disregarded by the Court.

**A.    Ziraat's Claim Of Sovereign Immunity Is Meaningless
Because This Dispute Falls Within The "Commercial
Activity" Exception To The Foreign Sovereign Immunities Act**

The Banks argue that Ziraat is immune from this Court's subject matter jurisdiction pursuant to section 1604 of the FSIA by reading the "commercial activity" exception from immunity in section 1605(a)(2) out of the FSIA. Specifically, the Banks argue that "there is no nexus between Deep Woods' substantive claims against SDIF and Ziraat's banking activity in the United States." (Bank Mem. at 10).[1] However, as argued in Deep Woods' brief in support of its motion to compel, the Second Circuit already has decided that a foreign sovereign bank operating in the United States is subject to the post-judgment jurisdiction of U.S. courts.

---

[1] The Banks rely on a decision of the District Court for the District of Columbia -- *Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 274 (D.D.C. 2008) -- to support their contention that a subpoena recipient's commercial activity must relate to the substantive claims upon which the judgment creditor obtained a judgment for the commercial activity exception to apply. Even if that decision had any precedential value to this Court, it would not apply here because the judgment creditor in *Peterson* **did not argue** that its subpoena was "based upon" the subpoena recipient's commercial activity. As explained in its moving brief for its motion to compel and below, Deep Woods has shown that the Information Subpoenas – relating to the Banks' commercial banking relationship with SDIF – are wholly based upon the Banks' commercial banking activities in New York.

In *First City, Texas-Houston, N.A. v. Rafidain Bank*, the Second Circuit upheld a contempt order issued against a bank wholly-owned by the Iraqi government for the bank's failure to respond to a subpoena issued by a judgment creditor.  281 F.3d 48, 55 (2d Cir. 2002). The Second Circuit held that because the bank had conducted commercial banking transactions in the United States, the commercial activity exception applied to the bank.  *Id.* at 53.  In the words of the Second Circuit:

> [The Iraqi bank], **having participated in commercial banking transactions in the United States**, submitted itself to the jurisdiction of the United States courts, as well as to the procedures and legal responsibilities associated with such jurisdiction, to the extent those procedures and responsibilities are related to its commercial activities in the United States.

*Id.*  (citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)).[2]

This Court, in its decision in Eitzen Bulk, already has determined that a foreign sovereign bank conducting commercial activity in the United States falls within the commercial activity exception of the FSIA when served with a post-judgment enforcement subpoena, as discussed in detail in Deep Woods' motion to compel.  The Banks' two arguments against the application of *Eitzen Bulk* to the very apposite facts of this case are simply wrong.  (Bank Mem. at 11).

The Banks first argue that this Court's August 3, 2010 order denying State Bank of India's ("SBI") motion to dismiss (attached as Appendix "1" to Deep Woods' brief in support of its motion to compel) is inapposite because "[t]he order itself is silent as to the nature and extent of SBI's activities in New York or the connection between those activities and SBI or the facts that underpin the judgment."  However, that argument is refuted completely by the language of

---

[2] Although in *First City* the subpoena recipient -- the Iraqi bank -- was also the judgment debtor and the "commercial banking transactions" that the Second Circuit found satisfied the requirements of 1605(a)(2) were the same transactions that gave rise to the underlying claims, those distinctions do not change the Second Circuit's clear determination that conducting commercial banking transactions in the United States -- which the Banks indisputably do -- will submit a foreign sovereign bank to the "procedures and legal responsibilities" associated with the jurisdiction of a court of the United States, including procedures and legal responsibilities associated with judgment-related discovery and enforcement.

the August 3 order, which was block-quoted at length in Deep Woods' moving brief and in which this Court found: (i) that Eitzen Bulk's subpoena was properly served on SBI based on Eitzen Bulk's reasonable belief that SBI holds funds or other property belonging to Ashapura; (ii) that SBI concededly was conducting commercial activity in the United States; and (iii) that Eitzen Bulk's subpoena was "based upon" SBI's commercial activity because the subpoena sought information about funds belonging to the judgment debtor but held by SBI in SBI's capacity as a banking institution.

Deep Woods has established a reasonable belief that the Banks have information regarding SDIF that will assist it in collecting its judgment. In fact, at a recent deposition, SDIF, through the head of its Finance Department, testified that it maintains accounts at the Banks. Also, Ziraat -- like SBI -- does not (and cannot) dispute that it is engaged in commercial activity in New York City. Thus, for the same reasons as those articulated by this Court in its August 3, 2010 *Eitzen Bulk* order, there is a sufficient nexus between Deep Woods' subpoenas and Ziraat's commercial activity to satisfy the FSIA's requirement that the former be "based upon" the latter.

Second, the Banks argue that the August 3 order in *Eitzen Bulk* was somehow "rejected" by this Court's order and opinion of October 5, 2011 in the same action. Initially, it should be noted that the commercial activity exception is never discussed or even mentioned in that October 5 opinion, so it is impossible that the October 5 opinion rejected application of the commercial activity exception to facts such as those present here. To the contrary, in that opinion this Court found that subject matter jurisdiction existed over Bank of India ("BOI") pursuant to section 1605(a)(1) of the FSIA because BOI waived its immunity by failing to raise any objection to subject matter jurisdiction for nearly two years, during which time it responded twice to the subpoenas served upon it. Because such an obvious waiver of sovereign immunity

existed under section 1605(a)(1), it was unnecessary for this Court to address the immunity

exception under 1605(a)(2) in the October 5 opinion.

In addition to misconstruing this Court's October 5 opinion, the Banks misrepresent the

transcript of a May 23, 2011 hearing preceding that October 5 opinion.  The Banks claim that the

transcript shows that this Court "expressly rejected the argument that Deep Woods now advances"

-- that Ziraat is not immune from the Subpoenas because of the applicability of the commercial

activity exception in section 1605(a)(2).  However, the referenced language in that transcript

explicitly applies **only** to Eitzen Bulk's argument for application of the waiver exception under

1605(a)(1), and does not address section 1605(a)(2) in any manner:

> MR. MATHESON: Yes, your Honor.  Just to respond to the points on the
> foreign sovereign immunity issue.
>
> Here, foreign sovereign immunity 28 United States Code 1605 presents the
> exceptions to foreign sovereign immunity.  There are two applicable here.  The
> first, **1605(a)(1), is the waiver of immunity**.  That waiver is applicable in this
> case, your Honor, because Bank of India came to New York, requested
> permission to do so, and in exchange for that privilege, it subjected itself to the
> entirety of New York law.
> ***
> THE COURT: Waiver doesn't apply.

*See* Transcript dated May 23, 2011 at 24:8 - 25:9 (emphasis added).  The Banks' failure to

explain that the additional relevant portions of that transcript – *i.e.* the portions of the transcript

that make clear that the cited discussion pertains to the waiver exception in 1605(a)(1) and that

the Court did not decide the 1605(a)(2) issue at the hearing – is a critical omission.[3]

Nor is the Banks' interpretation of the "based upon" language in the commercial activity

exception convincing.  (Bank Mem. at 12).  Just as any suit brought against a foreign sovereign

bank arising from a banking transaction is "based upon" the foreign sovereign bank's

---

[3] It should be noted that the commercial activity exception was discussed on pages 23-26 of the transcript, but the
Court made no decision whether that exception applied.

commercial activity, any subpoena served upon a foreign sovereign bank in New York is "based upon" that foreign sovereign bank's domestic commercial banking activity.

The Banks ask this Court to interpret the FSIA to allow Ziraat to operate with all the rights and privileges of a private commercial bank in New York without also being subject to the same legal process and procedures, a result that the FSIA specifically intended to avoid when it enacted the commercial activity exception. *See Fir Tree Capital Opportunity Master Fund, LP v. Anglo Ir. Bank Corp.*, 11 Civ. 0955 (PGG), 2011 U.S. Dist. LEXIS 136018, at *33 (S.D.N.Y. Nov. 28, 2011) ("The purpose of the commercial activity exception is to 'prevent[] foreign states from hiding behind their sovereignty when acting as market participants.'") (brackets in original) (quoting *Southway v. Central Bank of Nigeria*, 994 F. Supp. 1299, 1307 (D. Colo. 1998)).

In order to avoid giving Ziraat wholesale immunity from the processes and procedures of the U.S. judicial system even as it conducts wholly commercial activity in New York, this Court should find that the commercial activity exception from immunity in section 1605(a)(2) of the FSIA applies and maintain its jurisdiction over Ziraat.

**B.      The Information Subpoenas To Vakif and Ziraat Comply With The FSIA And The CPLR**

The Banks next argue that they should not have to answer the Subpoenas because the information sought thereby is outside the scope of the FSIA and the Subpoenas do not comply with the CPLR.  However, (1) the FSIA does not limit the scope of discovery in aid of execution, (2) the requests fall well within the broad scope of permissible post-judgment discovery pursuant to the CPLR, and (3) neither of the Banks' "defenses" operate to relieve the Banks of their duty to respond fully to the Information Subpoenas.

1.   **Section 1610 Of The FSIA Applies Only To Attachment And
       Execution And Does Not Limit The Scope Of Post-Judgment Discovery**

The Banks argue that Deep Woods is not entitled to SDIF's financial information because "[t]he limited exceptions found in the FSIA regarding attachment and execution of [SDIF's] assets apply to discovery regarding the foreign state's assets as well" and the Court has not authorized Deep Woods to execute on assets outside of the United States.  (Bank Mem. at 16.) However, this Court already has determined that SDIF does not have immunity from attachment, and the Banks' argument seeks to curtail judgment-creditors' broad discovery power so that it would apply only to information about assets which the subpoena target deems presently attachable.

Indeed, the Banks cite only a single opinion -- *Walters v. People's Republic of China*, 672 F. Supp. 2d 573 (S.D.N.Y. 2009) -- to support their argument, a decision which misreads and misapplies the Second Circuit's decision in *EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007).  Although the *Walters* court cited *EM Ltd.* for the proposition that "the Second Circuit directs courts to limit any requests for discovery to correspond to the FSIA's substantive reach," *Walters*, 672 F. Supp. 2d at 575, *EM Ltd.* is inapposite to the facts of *Walters* and this case and does not contain any such direction.

The dispute in *EM Ltd.* arose from Argentina's default on its sovereign debt.  *EM Ltd.*, 473 F.3d at 467.  EM Ltd. ("EM") and NML Capital, Ltd. ("NML"), two holders of Argentine debt, filed separate actions against Argentina in the Southern District of New York to recover the principal and interest they were owed.  *Id.* at 467-68.  By the end of 2005 EM had won a judgment of over $700 million and NML's action -- stating claims for over $200 million -- was still pending.  *Id.*  EM sought and obtained post-judgment restraining notices in December 2005 and NML sought and obtained orders of pre-judgment attachment in January 2006, all of which

10

were directed to immobilizing certain funds belonging to Argentina being held at eight garnishee banking institutions in New York. *Id.* at 468-69. In response, Argentina moved by order to show cause to vacate the restraining notices and orders of attachment, based in part on a defense that the funds at the New York garnishee banks were immune from execution and attachment by operation of the FSIA. *Id.* at 469. EM and NML cross-moved to confirm the restraining notices and, in the alternative, "EM sought discovery on five issues relating to the validity of the Amended Restraining Notices." *Id.* The district court vacated the restraints and attachments, denied the cross-motion to confirm and "implicitly denied EM's discovery request by vacating the Amended Restraining Notices without authorizing further discovery." *Id.* at 471. The Second Circuit affirmed the district court's decision on the discovery point because "in the FSIA context, 'discovery should be ordered circumspectly and ***only to verify allegations of specific facts crucial to an immunity determination*.'" *Id.* at 486 (emphasis supplied; citation omitted).

From those facts it is plain to see that the proposed ***jurisdictional discovery*** denied in *EM Ltd.* pertained only to whether or not the funds held in the New York garnishee banks were immune from restraint and attachment. In other words, the Second Circuit's language cited both in the *Walters* opinion, 672 F. Supp. 2d at 574, and in the Banks' brief (Bank Mem. at 16), specifically and exclusively referred to EM's entitlement to discovery for the threshold issue of determining FSIA jurisdictional immunity.[4] The Second Circuit was not -- as suggested in *Walters* and by the Banks – opining on the appropriate scale of discovery in aid of execution on a judgment where, as here, the Court already has determined that SDIF has no FSIA immunity.

---

[4] EM's specific discovery requests were: "(1) the effect of the Decrees under Argentine law; (2) the purposes of the funds subject to the Amended Restraining Notices; (3) how and from where Argentina paid the International Monetary Fund ('IMF') on January 3, 2006; (4) how the Central Bank's actions in implementing the Decrees compare with the 'traditional' central banking activities of central banks; and (5) what Argentina plans to do with the foreign exchange reserves subject to the Decrees that will accumulate in the future."

Finally, the Banks' interpretation of section 1610 is not supported by a textual interpretation of the FSIA. Section 1610 specifically refers to a foreign sovereign's immunity from "attachment" and "execution."  Attachment is defined by Black's Law Dictionary as "[t]he seizing of a person's property to secure a judgment or to be sold in satisfaction of a judgment," *Black's Law Dictionary* 145 (9th ed. 2009), and execution is defined by Black's Law Dictionary as the "[j]udicial enforcement of a money judgment, usu[ually] by seizing and selling the judgment debtor's property.". *Id.* at 650.  Neither definition encompasses the act of discovery, nor is discovery mentioned in any other context in section 1610.

The separate issue of judgment enforcement-related discovery has in fact been addressed by the Second Circuit in *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002).  In that case, as here, after the Second Circuit resolved the threshold issue that the district court had jurisdiction over a foreign sovereign bank by virtue of section 1605(a)(2), the Second Circuit determined that the district court's jurisdiction included "discovery pertaining to the judgment debtor's assets." *Id.* at 53-54.  The Second Circuit reasoned that if the district court did not have such jurisdiction "the FSIA would in some cases confer jurisdiction to do no more than render an unenforceable, permanently unsatisfied judgment," and ultimately concluded that the judgment enforcement subpoenas were valid and enforceable because "[d]iscovery of a judgment debtor's assets is conducted routinely under the Federal Rules of Civil Procedure." *Id.* at 54 ("'[a] judgment creditor is entitled to discover the identity and location of any of the judgment debtor's assets, *wherever located*'") (quoting *Minpeco v. Hunt*, No. 81-cv-7619, 1989 U.S. Dist. LEXIS 5723 (S.D.N.Y. May 24, 1989) (emphasis supplied)).  In *First City*, as here, the Second Circuit primarily was concerned with providing the judgment creditor the opportunity to obtain essential discovery in aid of execution and did not limit the scope of the judgment creditor's

rights to that discovery in any way consistent with New York and Federal Court's policies of broad enforcement discovery.

Moreover, the Second Circuit's liberal view of discovery in aid of execution under section 1610 of the FSIA is shared by the Ninth Circuit. In *Richmark Corp. v. Timber Falling Consultants*, the judgment creditor ("TFC") served discovery requests on a judgment debtor ("Beijing") seeking to identify Beijing's assets worldwide. 959 F.2d 1468, 1472 (9th Cir. 1992). Beijing sought to avoid discovery and vacate discovery sanctions, arguing in part that the law of its home country prohibited it from providing the requesting information. *Id.* at 1474. In analyzing one element of the comity analysis – hardship – the Ninth Circuit noted that Beijing could have avoided the potential hardship of disclosing the requested information – *i.e.* breaking its home country's law – by posting a supersedeas bond or paying its judgment debt. *Id.* at 1477. When Beijing argued that "requiring either course of action would violate its 'immunity' from execution under [section 1610(b) of the FSIA]," the Ninth Circuit responded that Beijing could not avoid its discovery obligations by hiding behind the provisions of section 1610:

> Beijing objects that requiring either course of action would violate its 'immunity' from execution under the [section] 1610(b). Beijing misreads that provision. Section 1610 provides for the execution of judgments against foreign sovereigns. **It is true that section 1610 does not empower United States courts to levy on assets located outside the United States.... [However], TFC can seek to execute the judgment in <u>whatever foreign courts</u> have jurisdiction over Beijing's assets,** *see Nippon Emo-Trans Co. v. Emo-Trans, Inc.*, 744 F. Supp. 1215, 1218 (E.D.N.Y. 1990), **but <u>TFC needs discovery in order to determine which courts those are</u>. Beijing may be able as a practical matter to conceal its assets from the district court and therefore avoid execution of TFC's judgment, but it has no right to do so, and it certainly has no right to avail itself of the United States judicial system for purposes of appeal while at the same time seeking to evade the judgments of that judicial system.**

*Id.* at 1477-1478 (emphases added).

Deep Woods' right to post-judgment enforcement discovery is not limited to documents concerning assets that the Banks consider attachable based upon their interpretation of the extent of SDIF's immunity.   Like Beijing, SDIF has refused to pay its judgment debt or post a supersedeas bond pending appeal.   Like Beijing, SDIF has availed itself of the United States judicial system for purposes of appeal while simultaneously using all possible effort to avoid paying the judgment rendered against it by this Court.   The Banks may not avoid their discovery obligations by the spurious argument that discovery relating to SDIF's assets located elsewhere is prohibited.

2.      **The Information Subpoenas Comply With The Requirements Of The CPLR**

The Banks argue, without citation to any supporting authority, that Deep Woods has not met the extremely liberal "reasonable belief" standard for information subpoenas established by rule 5224 of the CPLR, and that the information sought by the Information Subpoenas is not relevant to Deep Woods' satisfaction of its judgment against SDIF.   (Bank Mem. at 18-22.) However, based on the currently available public information about the Banks, Deep Woods has a reasonable belief that they have information regarding SDIF that will aid Deep Woods in collecting its judgment.   Moreover, the Banks' relevance argument is based on faulty logic and a misunderstanding of the law, and in any event does not comport with the CPLR's reasonable belief standard.[5]

_____

[5] "[A] judgment creditor looking for assets to satisfy a judgment can serve an information subpoena on anyone at all, as long as the judgment creditor reasonably believes that the subpoena will help." *Buffalo Laborers Welfare Fund v. Signal Constr. Co.*, 06-CV-400A, 2011 U.S. Dist. LEXIS 122583, at *9 (W.D.N.Y. Oct. 24, 2011) (Arcara, J.) (emphasis supplied) (granting motion to compel third party to respond to information subpoena); *SEC v. Tome*, No. 81 Civ. 1836 (MP), 1987 U.S. Dist. LEXIS 3269, at *3 (S.D.N.Y. Apr. 3, 1987) (Pollack J.) (compelling responses to post-judgment interrogatories because "Rule 69 was intended to provide an effective and efficient means of securing the execution of judgments"); *Gryphon Dom. VI, LLC v. GBR Info. Servs., Inc.*, 29 A.D.3d 392, 393, 815 N.Y.S.2d 65, 66 (1st Dep't 2006) (compelling discovery because third party "has not conclusively established that it lacks information to assist the judgment creditors in obtaining satisfaction of the judgment").   Put differently, a subpoena may properly be served on any party likely to have knowledge relevant to a judgment debtor's assets or

Deep Woods reasonably believes that the requested information will help it enforce its judgment against SDIF.  First, Deep Woods has learned in a recent deposition of the head of SDIF's Finance Department that SDIF maintains multiple accounts at both Ziraat and Vakif. (*See* O'Brien Decl., ¶ 4, Exh. 1 (Akcicek Deposition) at Tr. 21:14-22:10; 37:16-39:7; 39:20-40:40:9.)  This is in addition to Deep Woods reasonable belief set forth in detail in the moving brief for its motion to compel (Dkt. 166) that SDIF has a financial relationship with the Banks, as both Banks are deposit-taking institutions in Turkey that, by law, must pay deposit insurance premiums to SDIF.  While the Banks argue that those premiums are not attachable (an argument that Deep Woods neither concedes nor addresses here), that fact is irrelevant to whether the Banks possess information which Deep Woods reasonably believes will assist it in the enforcement of its judgment.  By obtaining information pertaining to the deposit insurance premiums, for example, Deep Woods might discover the location of attachable assets.  Without discovery, Deep Woods will never know.

Finally, the Banks argue that the information requested in the Information Subpoenas is not "relevant to the satisfaction of [Deep Woods'] judgment" pursuant to section 5223 of the CPLR because "SDIF assets outside the [U.S.] are not attachable."  (Bank Mem. at 20.)  That argument fails for the same general reason as the Banks' argument under rule 5224 of the CPLR: the fact that SDIF's assets outside the U.S. may or may not be attachable pursuant to U.S. law does not and should not prevent Deep Woods from obtaining the necessary information to determine whether to execute its judgment wherever such execution may be possible.  Indeed, the Banks' own expert predicts that Deep Woods will be unable to enforce its judgment until it involves the Turkish Courts.  (Reisoglu Decl at ¶ 20).

---

debts, and the recipient is required to give a full accounting of all of those assets or debts. *See Dulce v. Dulce*, 233 F.3d 143, 146-47 (2d Cir. 2000).

## C.   <u>The Comity Analysis Favors Deep Woods</u>

The Banks argue that they should not be required to respond to the information subpoenas because to do so would require them to reveal information that Turkish law deems secret, and that the Court's order therefore offends principals of international comity.  This is incorrect.  The Second Circuit has articulated a four factor comity analysis:

> (i) the competing interests of the nations whose laws are in conflict; (ii) the hardship that compliance would impose on the party or witness from whom discovery is sought; (iii) the importance to the litigation of the information and documents requested; and (4) the good faith of the party resisting discovery.

*First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 22 (2d Cir. 1998) (citation omitted).

Those factors have since been conformed to the Restatement (Third) of Foreign Relations Law § 442(1)(c), which advises courts to consider:

> (1) the importance of the documents or information requested to the litigation; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of retrieving the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located.

*Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 151 (S.D.N.Y. 2011); *see also British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 90 Civ. 2370 (JFK) (FM), 2000 U.S. Dist. LEXIS 7509, at *26 (S.D.N.Y. June 1, 2000) (citing *Madanes v. Madanes*, 186 F.R.D. 279, 285 (S.D.N.Y. 1999)); *Gucci Am., Inc. v. Curveal Fashion*, 09 Civ. 8459 (RJS)(THK), 2010 U.S. Dist. LEXIS 20834, at *2 (S.D.N.Y. Mar. 8, 2010).  *Tiffany (NJ) LLC*, 276 F.R.D. at 151 (quoting *Gucci Am.*, 2010 U.S. Dist. LEXIS 20834, at *2) (Courts "'**may** also consider the hardship of compliance on the party or witness from whom discovery is sought [and] the good faith of the party resisting discovery.'") (emphasis supplied).

16

The Banks' entire comity analysis rests on *Minpeco S.A. v. ContiCommodity Servs., Inc.*, 116 F.R.D. 517, 522 (S.D.N.Y. 1987). A close look at the facts of that case, however, actually shows that the *Minpeco* court's analysis actually weighs heavily in Deep Woods' favor.

In the Banks' Turkish expert's affirmation, Professor Reisoglu writes that the Banks could be subject to civil or criminal penalties under Turkish law if an investigation determines that "a client secret has been disclosed to someone other than the authorities explicitly authorized by law *without the client's prior consent*..." Reisoglu Declaration ¶ 5. In other words, the interest at stake is not the interest of the Turkish Government worthy of comity, but rather Judgment-Debtor SDIF's interest in keeping its financial information from Judgment Creditor Deep Woods. *See Minpeco, S.A.*, 116 F.R.D. at 525 ("although the bank secrecy privilege is codified in the Swiss criminal law, it differs from the traditional criminal proscription in that it remains a personal privilege that can be waived by the bank customer. In this sense, then, *Swiss bank secrecy law primarily protects the right of commercial privacy of bank clients, not the Swiss government itself or some other public institution or interest*." (citation omitted; emphasis added)).

Moreover, the Turkish Government has made no objection to Deep Woods' requests despite the fact that Ziraat is allegedly an instrumentality of the Republic of Turkey, and SDIF itself has not objected to the disclosure despite its attorneys' knowledge that Deep Woods is seeking its financial records. *Weiss v. National Westminster Bank, PLC*, 242 F.R.D. 33, 51, 55 (E.D.N.Y. 2007) ("where the British government's interest in its bank secrecy laws is not asserted, the court need not consider those interests here .... in deciding whether to order discovery of bank records located abroad, courts may properly consider a country's failure to assert a national interest in the enforcement of its bank secrecy laws. Similarly, there is no

reason that a court may not also consider a bank customer's failure to object to the disclosure of its bank records after notification that those records are sought in a federal civil action.").

Hence, because simple consent would relieve the Banks of their concerns about Turkish confidentiality law, the Republic of Turkey has no interests to balance under the first *Minpeco* factor. Accordingly, there is little hardship to the Banks. Moreover, the Banks have not even attempted to secure a waiver[6], which indicates a lack of good faith, and consequently the fourth *Minpeco* factor also weighs in Deep Woods' favor. *Cf. Minpeco, S.A.*, 116 F.R.D. at 528 ("it would appear that BPS has in good faith made diligent efforts, to provide the discovery requested by plaintiffs. Like the petitioner in *Societe Internationale* [357 U.S. 197, 208 (1958)], BPS has made extensive attempts to secure waivers of bank secrecy rights from its trading customers, albeit with limited success.") (internal quotations omitted).

Moreover, the information requested by the Subpoenas is of prime importance for Deep Woods' ability to collect its judgment, SDIF having made it clear it has no intention of paying any portion thereof. *See e.g., Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, Civ. A. No. 03-08554 (DCP) (JCF), 2009 U.S. Dist. LEXIS 33096, at *12 (S.D.N.Y. Apr. 17, 2009) ("the disclosure requested is clearly important to the litigation here because the parties' dispute has progressed to the stage of enforcement of judgment. Thus, identifying business relationships and transactions that may affect the parties' ability to satisfy that judgment is of prime importance"). Due to SDIF's continuing intransigence in discovery, Deep Woods has absolutely no alternative means of securing the requested information. *See British Int'l Ins. Co.*, 2000 U.S.

---

[6] The Banks also arguably have waived their right to rely on Turkish confidentiality law by virtue of their explicit submission to New York and U.S. anti-money laundering laws. Every foreign banking corporation in New York is required to establish and maintain an anti-money laundering program that complies with applicable Federal anti-money laundering laws, including the obligation to file suspicious activity reports (3 CRR-NY 116.2). Federal law provides that the Secretary of the Treasury may require any financial institution to report any suspicious transaction relevant to a possible violation of law or regulation (31 U.S.C. § 5318(g)). A branch of a foreign bank in the United States is a "financial institution" for the purpose of suspicious activity reporting (31 U.S.C. § 5312(a)(2)(D)). Thus Ziraat and Vakif have waived their right to the confidentiality of banking information in this context.

Dist. LEXIS 7509, at *28-29 ("The third factor -- location of the information -- augurs against disclosure since all of ACIC's asset inquiries are apparently directed to information and people located in Mexico. This factor, however, is fully counterbalanced by the fourth factor -- the unavailability of alternative means of obtaining substantially equivalent information.") (citations omitted).   The comity analysis favors Deep Woods, and the Court should not set aside the February 8 Order.

## CONCLUSION

For the foregoing reasons, this Court should deny the Banks motion to set aside the Court's February 3, 2012 Order compelling the Banks to fully answer the Subpoenas with respect to their entire worldwide organizations and to promptly provide such responses to judgment creditor Deep Woods.  This Court should further award Deep Woods the costs incurred opposing this motion.

Dated: New York, New York
       April 13, 2012


                         PRYOR CASHMAN LLP


                         By: _____s/_____
                              James S. O'Brien, Jr.
                              (jobrien@pryorcashman.com)
                              Ross M. Bagley
                              (rbagley@pryorcashman.com)
                         7 Times Square
                         New York, New York  10036
                         (212) 421-4100